UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

Isaac J. Grinspan

                    Debtor.
-------------------------------------------------------------X
Isaac J. Grinspan,

                  Plaintiff

          -v-

Tomor Grinspan and
David J. Seidemann,

               Defendants.
-------------------------------------------------------------X

Chapter 7

Case No.: 13-76084-las

Adv. Pro. No.: 14-8116-las

## MEMORANDUM DECISION AFTER TRIAL

Plaintiff Isaac Grinspan commenced this adversary proceeding against his ex-spouse, Tomor Grinspan, and her attorney, David J. Seidemann, to recover damages under 11 U.S.C. § 362(k) for an alleged violation of the automatic stay imposed under 11 U.S.C. § 362(a).[1] Plaintiff alleges defendants willfully violated the automatic stay when they continued to litigate a motion to hold plaintiff in contempt in the parties' state court matrimonial action after plaintiff filed his chapter 7 bankruptcy petition. Plaintiff's view is that litigation of the contempt motion, which sought to enforce a money judgment consisting of attorneys' fees awarded to Tomor as a result of plaintiff's alleged default under their divorce agreement, is not exempt from the automatic stay under § 362(b)(2)(B) as an act to collect a domestic support obligation. Plaintiff also asks the Court to permanently enjoin defendants from litigating the contempt motion. In response, defendants argue that while matters were

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)".

proceeding in state court post-petition, no action was taken by them to enforce the pre-petition money judgment. Additionally, defendants argue that even if their actions in the state court proceeding post-petition are construed as a demand for payment of the money judgment, those actions sought to collect upon a domestic support obligation and are exempt from the automatic stay under § 362(b)(2)(B). Last but not least, defendants contend that if their post-petition conduct is not exempt from the automatic stay, such conduct was not taken in willful violation of the stay.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011. This is a core proceeding under 28 U.S.C. § 157(b)(1) in which final orders or judgment may be entered by the Court. *See In re Jean-Francois*, 532 B.R. 449, 451 (Bankr. E.D.N.Y. 2015).

Having considered the parties' pretrial submissions and the evidence presented at trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7052. To the extent that a finding of fact includes a conclusion of law, it is deemed a conclusion of law and vice versa.

For the following reasons, the Court finds in favor of plaintiff. Defendants willfully violated the automatic stay and, by statute, are liable for actual damages, including costs and attorneys' fees under § 362(k). The Court reserves judgment on actual damages pending submission of supplemental briefing, and will issue a separate order scheduling a hearing to determine the amount of appropriate damages. The Court declines to award plaintiff punitive damages and dismisses plaintiff's request for permanent injunctive relief as moot.

I.      Findings of Fact

The following findings of fact are based on the trial record, which include the trial testimony, exhibits entered into evidence, and the parties' stipulation of certain facts.[2]

A.      Pre-Petition State Court Proceedings

Plaintiff and Tomor are former spouses and have two children together.  Stip. ¶¶ 2, 3. They entered into a divorce stipulation of settlement (the "Settlement") dated July 27, 2010. Defs.' Ex. A; Stip. ¶ 4.  The Settlement provides that if either plaintiff or Tomor failed to comply with their respective obligations under the Settlement, the defaulting party will reimburse the non-defaulting party for legal fees incurred in connection with enforcing the Settlement, so long as the non-defaulting party prevails.  Stip. ¶ 5; *see* Defs.' Ex. A at 41 ("[T]he defaulting party . . . agrees to indemnify the non-defaulting party against and/or to reimburse him/her for any and all expenses, costs, and reasonable attorneys' fees resulting from or made necessary by the bringing of any suit or other legal proceeding to enforce any of the terms, covenants or conditions of this [Settlement].").  If the non-defaulting party loses, he or she must reimburse the legal fees incurred by the other party.  Defs.' Ex. A at 41.  On May 3, 2011, a judgment of divorce was entered.  Defs.' Ex. B; Stip. ¶ 6.  The judgment of divorce incorporated the Settlement.  Stip. ¶ 6.

In May 2013, Tomor sought to enforce plaintiff's obligations under the Settlement and plaintiff sought to decrease his child support payments.  Defs.' Ex. E at 2.  Thereafter, Nassau County Supreme Court Judge Edward Maron entered a Consent Order, dated July 1, 2013, that required plaintiff to reinstate his child support payments and to cure any arrears, pay

---

[2] For convenience, the Court will refer to filings in the adversary proceeding as "Adv. Dkt. No. __" and filings in the lead bankruptcy case as "Dkt. No. __".  The Court will also refer to the trial transcript [Adv. Dkt. No. 55] as "Tr.", exhibits as "Ex. __", and the parties' stipulated facts set forth in their joint pre-trial memorandum [Adv. Dkt. No. 48] as "Stip. ¶ __".

for one of his children's therapy, and restore Tomor as the beneficiary of his life insurance policy. Defs.' Ex. E ¶¶ 2, 12, 19; Stip. ¶ 8. The Consent Order also provided that plaintiff must pay Tomor $18,000 for attorneys' fees she incurred during the enforcement proceeding. Defs.' Ex. E ¶ 25.

Plaintiff defaulted under the Consent Order, and Tomor obtained a money judgment against plaintiff in the amount of $18,372.61, which consisted of the attorneys' fees owed to Tomor plus accrued interest (the "Money Judgment"). Defs.' Ex. I; Stip. ¶ 9. On or about September 9, 2013, defendant Seidemann, Tomor's attorney in the post-judgment phase of her state court matrimonial action, served plaintiff with an "Information Subpoena." Defs.' Ex. J; Stip. ¶¶ 7, 10. Plaintiff did not respond to the Information Subpoena or fulfill his obligations set forth in the Consent Order, which included payment of the Money Judgment. Stip. ¶ 11. As a result, on or about November 14, 2013, Seidemann moved by order to show cause to hold plaintiff in contempt for his alleged non-compliance with the Consent Order and for him to be imprisoned, again seeking to enforce the Money Judgment and obtain answers to the Information Subpoena (the "Contempt Motion"). Pl.'s Ex. 6; Stip. ¶ 11; Tr. 17:14-18:1. The Contempt Motion did not request relief related to custody or visitation rights of plaintiff and Tomor's children. Stip. ¶ 12. The return date of the Contempt Motion was December 5, 2013. Stip. ¶ 13.

On December 2, 2013, plaintiff, by his then-counsel in the state court proceeding, Steven Borofsky, submitted answers to the Information Subpoena. Stip. ¶ 14. However, Seidemann was dissatisfied with plaintiff's answers. Seidemann emailed Borofsky and stated "[he] will give [plaintiff] till [sic] Thursday to answer [the Information Subpoena] again truthfully. Otherwise, [he] will seek his incarceration." Stip. ¶ 15.

B.  Plaintiff's Bankruptcy Case and Post-Petition State Court Proceedings

Plaintiff filed a chapter 7 bankruptcy petition on December 3, 2013. Stip. ¶ 1.  On the petition date, plaintiff's bankruptcy counsel, Richard Kanter, faxed Seidemann a letter and called Seidemann's cellphone to advise him of plaintiff's bankruptcy filing.  Pl.'s Ex. 9; Tr. 133:18-24, 134:7-139:1. However, Seidemann testified that he was not in his office on December 3 to receive the fax, Tr. 135:5-7, and that he was not definitively told by Kanter during the phone call that plaintiff actually filed a bankruptcy petition, Tr. 134:2-6.  Although Seidemann claimed he did not have actual knowledge of the bankruptcy filing on December 3, the parties stipulated that both Seidemann and Tomor had actual notice of the filing "at least prior to December 5, the return date of the Contempt Motion." Stip. ¶ 16.  Seidemann testified to the same.  Tr. 146:14-16.

On December 5, 2013, the parties appeared in state court on the Contempt Motion. Stip. ¶ 18.  Debtor arrived in state court on this day under the impression that he would be sent to jail if he did not pay the Money Judgment.  Tr. 106:10-107:10.  Although it is defendants' position that the Contempt Motion was exempt from the automatic stay, Stip. ¶ 17, Seidemann advised Judge Maron that it's possible that the relief he was seeking in the Contempt Motion was subject to the stay, Tr. 171:6-9.  In spite of this awareness, Seidemann continued to prosecute the Contempt Motion in its entirety.  Adv. Dkt. No. 34-13 at 24:9-16. Seidemann testified that Judge Maron was going to carry the motion "to the end of time," Tr. 173:12-13, and Borofsky stated it to be "the practice of Judge Mar[o]n to carry . . . motions when he's not sure what to do with them," Adv. Dkt. No. 34-13 at 31:8-10.  At the December 5 hearing, Judge Maron asked the parties to file briefs on the applicability of the automatic stay to the Money Judgment, and entered an order that directed the parties to appear for a conference on January 4, 2014 and appointed Jeffrey Halberich as the children's attorney. Adv. Dkt. No. 34-13 at 38:7-17, 41:4-7; Stip. ¶ 19; Tr. 265:14-19.  Thereafter, Seidemann

submitted a brief and a proposed order to Judge Maron. Defs.' Ex. O. Borofsky did not file a brief because he was relieved as plaintiff's counsel shortly after the hearing and replaced by Danielle Seid-Vazana.

Following the December 5 hearing, there were five court appearances by the parties: December 19, January 14, February 6, April 17, and April 29. Stip. ¶ 20; Tr. 256:24-257:2. There are no transcripts or other records of any of these hearings because of more than forty appearances before Judge Maron, the parties were on the record "twice, maybe three times at most." Tr. 174:10-21. Seidemann testified he did not move forward with the Contempt Motion at any of these court proceedings and that there was "zero discussion" of it. Tr. 257:3-6. However, Seidemann's testimony is contradicted by both a letter he wrote to Seid-Vazana on December 16, 2013, which he claims Judge Maron instructed him to send, and Seid-Vazana's testimony. Seidemann's letter advised Seid-Vazana that she was "scheduled to appear before Judge Maron on the Contempt Motion on January 14, 201[4]," Pl.'s Ex. 15, and Seid-Vazana testified she appeared on January 14 for the Contempt Motion, Tr. 81:8-13. The Contempt Motion and Seidemann's letter caused Seid-Vazana to believe that plaintiff could potentially be incarcerated because she testified that she has had clients in the past who have been arrested and "taken away in handcuffs." Tr. 20:18-21:22.

With respect to the December 19, February 6, and April 17 appearances, there is a lack of evidence to support a finding by this Court that they concerned the Contempt Motion. Seid-Vazana could not recall what matters those court appearances concerned, Tr. 41:22-44:7, and Halbreich had no knowledge of any discussions related to the Contempt Motion on those days because he only attended court conferences related to the children, Tr. 94:17-20.

Seidemann's December 16, 2013 letter to Seid-Vazana not only told her to appear in state court for the Contempt Motion on January 14, 2014, but it sought her opposition papers as well. Plaintiff's opposition to the Contempt Motion was filed in advance of the January

14, 2014 court conference, and Tomor's reply, which included her affidavit and an affirmation signed by Seidemann, was filed in March 2014. Stip. ¶¶ 24, 25. Seidemann's affirmation and Tomor's affidavit both requested that the state court grant the Contempt Motion "in its entirety." Stip. ¶ 26. The Contempt Motion was marked fully submitted on or about April 29, 2014. Stip. ¶ 29. Despite the Contempt Motion being marked fully submitted, on April 29, 2014, Seidemann advised the state court to "hold off decision on any part of the [Contempt Motion], including the request to enforce the Money Judgment or compel answers to the Information Subpoena." Stip. ¶¶ 27, 29. Also on April 29, 2014, Seidemann advised the state court that he was withdrawing the Information Subpoena. Stip. ¶ 27. At no point prior to April 29, 2014 did Seidemann seek to withdraw or modify the Contempt Motion to exclude the demand for payment of the Money Judgment or advise plaintiff not to respond to the Information Subpoena. Stip. ¶¶ 21, 28.

The Money Judgment has since been vacated. Tr. 58:10-13. In August 2014, Seidemann withdrew the Contempt Motion. Tr. 223:4-9. No ruling was made by Judge Maron as to whether the Money Judgment is a domestic support obligation or whether the automatic stay applies to the relief sought in the Contempt Motion. Stip. ¶ 23. Defendants did not move this Court for relief from the automatic stay to allow the Contempt Motion to proceed. Stip. ¶ 22.

II.    Conclusions of Law

As noted above, plaintiff alleges that defendants willfully violated the automatic stay imposed under § 362(a) when they continued to litigate the Contempt Motion in state court after plaintiff commenced his bankruptcy case. Plaintiff asks this Court to assess both actual and punitive damages under § 362(k) for defendants' willful violation of the stay. The Court will first identify the burden of proof for plaintiff's cause of action, and then consider the legal principles applicable to the automatic stay. The Court will then resolve the three primary

questions presented at trial: (1) whether defendants violated the automatic stay; (2) if so, whether the Money Judgment is a domestic support obligation and defendants' conduct is therefore exempt from the automatic stay under § 362(b)(2)(B); and (3) if defendants' conduct is not allowed under § 362(b)(2)(B), whether that conduct constitutes a willful violation of the automatic stay.

### A.  Burden of Proof

To prevail on his claim, plaintiff has the burden of proof to present evidence in support of the allegations in his complaint that defendants willfully violated the automatic stay and to prove those allegations by a preponderance of the evidence.  *In re Manchanda*, No. 16-10222 (JLG), 2016 WL 3034693, at *5 (Bankr. S.D.N.Y. May 19, 2016); *Jean-Francois*, 532 B.R. at 454, 456-57.  "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence . . . ."  *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (first alteration in original) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).  "As the finder of fact, the Court is entitled to make credibility findings of the witnesses and testimony."  *Merck Eprova AG v. Gnosis S.P.A.*, 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014).

### B.  The Automatic Stay: 11 U.S.C. § 362(a)

The automatic stay "is one of the most fundamental bankruptcy protections and . . . 'give[s] the debtor a breathing spell' and . . . prevent[s] creditors from obtaining payment of their claims in preference to and to the detriment of other creditors."  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff*), 429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010) (internal quotation marks and citations omitted).  Given its fundamental importance to a debtor's bankruptcy case, the automatic stay "is broadly written and

broadly construed." *In re NextWave Pers. Commc'ns, Inc.*, 244 B.R. 253, 271 (Bankr. S.D.N.Y. 2000). "Pursuant to section 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition 'operates as a stay, applicable to all entities, of' most actions against the debtor, the debtor's property and any property of the estate." *In re Hale*, 535 B.R. 520, 523 (Bankr. E.D.N.Y. 2015) (quoting 11 U.S.C. § 362(a)); *see In re Ebadi*, 448 B.R. 308, 313 (Bankr. E.D.N.Y. 2011). "The automatic stay most certainly is 'self executing' in the sense that it must be complied with absent any action by the debtor or the court, at the risk of sanctions for violation." *Metromedia Fiber Network Servs. v. Lexent, Inc.* (*In re Metromedia Fiber Network, Inc.*), 290 B.R. 487, 493 (Bankr. S.D.N.Y. 2003); *see also In re Lehman Bros. Holdings*, 433 B.R. 101, 112 (Bankr. S.D.N.Y. 2010) ("Nothing is more basic to bankruptcy law than the automatic stay and nothing is more important to fair case administration than enforcing the stay violation."), *aff'd*, 445 B.R. 130 (S.D.N.Y. 2011).

The onus is on the creditor to inform other courts of a debtor's bankruptcy filing and to discontinue any pending proceedings that run afoul of the stay provisions. *Soares v. Brockton Credit Union* (*In re Soares*), 107 F.3d 969, 978 (1st Cir. 1997) ("Bankruptcy law forbids creditors from continuing judicial proceedings against bankrupts, and, accordingly, it is the creditor's obligation to inform other courts of the situation." (citations omitted)); *In re Parry*, 328 B.R. 655, 659 (Bankr. E.D.N.Y. 2005) ("It is well settled that a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against a debtor."); *In re Henry*, 328 B.R. 664, 668 (Bankr. E.D.N.Y. 2005) (placing the responsibility to end collection efforts "squarely on the shoulders of the creditor who initiated the action" (quoting *Sucre v. MIC Leasing Corp.* (*In re Sucre*), 226 B.R. 340, 347 (Bankr. S.D.N.Y. 1998))). The burden is on the creditor to cease collection efforts because to force the debtor "to take affirmative legal steps to recover property seized in violation of the

automatic stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate." *In re Burbano*, No. 16-68396-PMB, 2017 WL 1058219, at *6 (Bankr. N.D. Ga. Mar. 20, 2017) (quoting *Roche v. Pep Boys, Inc.* (*In re Roche*), 361 B.R. 615, 621 (Bankr. N.D. Ga. 2005)).

Section 362(a) lists eight activities – acts and actions – that are stayed by the filing of a bankruptcy petition.  Three of the listed activities covered by the automatic stay are relevant to plaintiff's claim that defendants willfully violated the stay by continuing to litigate the Contempt Motion, and in particular, enforcement of the Money Judgment. Plaintiff relies on the provisions that stay: "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; . . . [and] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a). Plaintiff argues that defendants' post-petition conduct in respect of the Contempt Motion transgress these stay provisions because such conduct is nothing short of a continuation of a judicial proceeding, the enforcement of a pre-petition judgment, and an action to collect a pre-petition claim. In response, defendants assert that any action taken by them after plaintiff filed his bankruptcy case is exempt from the automatic stay under § 362(b)(2)(B).

Although the automatic stay brings to a halt virtually all creditor collection activity, § 362(b) contains twenty-eight exceptions to the stay. The exceptions are "read narrowly to secure [a] broad grant of relief to the debtor." *Stringer v. Huet* (*In re Stringer*), 847 F.2d 549, 552 (9th Cir. 1988); *see Pa. Dep't Pub. Welfare v. Davenport*, 495 U.S. 552, 560 (1990)

(construing exceptions to stay narrowly). As discussed below, the parties dispute whether the actions taken post-petition by defendants fall under the exception set forth in § 362(b)(2)(B). Section 362(b)(2)(B) provides that the filing of a bankruptcy petition does not operate as a stay against "the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B).  In short, defendants maintain that any acts taken by them post-petition in respect of the Money Judgment are exempt from the automatic stay under §362(b)(2)(B) as the collection of a domestic support obligation. For his part, plaintiff contends that § 362(b)(2)(B) is inapplicable because the Money Judgment is not a "domestic support obligation" as that term is defined in § 101(14A).  Additionally, plaintiff asserts that if the Money Judgment is determined to be a domestic support obligation, defendants' conduct still does not fall within the ambit of the exception as defendants sought to enforce, not collect, the Money Judgment.

    C.  Plaintiff Has Established that Defendants Violated the Automatic Stay

The Money Judgment was entered against plaintiff in August 2013.  Pl.'s Ex. 4.  In November 2013, Seidemann filed the Contempt Motion in state court to enforce payment of the Money Judgment, with the motion's return date scheduled for December 5, 2013.  Adv. Dkt. No. 48 at 3; Pl.'s Ex. 6. Plaintiff filed his bankruptcy petition on December 3, 2013.  Adv. Dkt. No. 48 at 1.  While the filing of the Contempt Motion itself did not violate the automatic stay because it was filed before plaintiff commenced his bankruptcy case, the evidence in this case reveals that defendants' post-petition conduct violated the automatic stay.  Specifically, defendants' conduct in respect of the pending Contempt Motion was prohibited by § 362(a)(1), (2), and (6).  Those provisions protect the bankruptcy estate by prohibiting the very acts taken here by defendants, to wit, the continuation of a legal proceeding, the enforcement of a judgment obtained pre-petition, and an act to collect or recover a claim that arose pre-petition.

The facts show defendants had actual knowledge of the filing of plaintiff's bankruptcy case "at least prior to December 5, 2013, the return date of the Contempt Motion," Stip. ¶ 16, and Seidemann testified that was the case, Tr. 146:14-16. Even if defendants were unaware of plaintiff's bankruptcy filing, "a party's knowledge of the [bankruptcy] filing is 'immaterial' to a determination of whether the stay was violated." *In re Prusan*, 495 B.R. 203, 207 (Bankr. E.D.N.Y. 2010) (quoting *Siskin v. Complete Aircraft Servs., Inc.* (*In re Siskin*), 231 B.R. 514, 517 (Bankr. E.D.N.Y. 1999)). Despite having actual knowledge of plaintiff's bankruptcy case prior to the December 5 hearing on the Contempt Motion, Seidemann did not take any action to modify the relief sought by the Contempt Motion or discontinue the Contempt Motion in its entirety. Nor did he ask this Court for relief from the automatic stay. In the end, the prudent approach would have been for Seidemann to seek declaratory relief from this Court before taking any action with respect to the pending Contempt Motion. *See Crysen/Montenay Energy Co. v. Esselen Assocs.* (*In re Crysen/Montenay Energy Co.*), 902 F.2d 1098, 1105 (2d Cir. 1990) ("[Section 362(k)] encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protect debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations."). Rather than filing a motion for relief from the automatic stay before proceeding in state court against plaintiff, Seidemann concluded that his actions were permissible. That was an incorrect assumption.

Although Seidemann testified that he "did nothing to enforce the [Money Judgment] after December 5" and that "there was no danger of the Contempt Motion being heard" because Judge Maron was going to "carry [the Contempt Motion] to the end of time," Seidemann's testimony is belied by the events as they actually unfolded. He continued to litigate the motion post-petition. Tr. 173:12-15, 182:1-3. Seidemann's post-petition letter to Seid-Vazana reminded her of the scheduled court appearance before Judge Maron on the

Contempt Motion and the date by which plaintiff's opposition to the Contempt Motion must be filed. After plaintiff's opposition was filed, Seidemann filed a reply, which still sought for the Contempt Motion to "be granted in its entirety." Pl.'s Ex. 8; Tr. 47:18-25, 48:1-10. It is hardly the case that Seidemann "did nothing" to enforce the Money Judgment post-petition. The evidence introduced at trial demonstrates that defendants' post-petition conduct falls squarely within the ambit of § 362(a)(1), (2), and (6), and the Court finds that Seidemann's own actions in continuing to prosecute the Contempt Motion after plaintiff commenced his bankruptcy case violated the automatic stay. *See Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 207 (2d Cir. 2014) ("[S]o central is the § 362 stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect." (alterations in original) (quoting *FDIC v. Hirsch* (*In re Colonial Realty*), 980 F.2d 125, 137 (2d Cir. 1992))); *see also In re Salov*, 510 B.R. 720, 727 (Bankr. S.D.N.Y. 2014) (stay violated where creditors filed a motion for writ of eviction against the debtor); *Prusan*, 495 B.R. at 206-08 (stay violated where creditor's attorney sent a post-petition letter to the state court in an underlying action requesting a contempt hearing against debtor).

Having established that defendants violated the stay by continuing to prosecute the Contempt Motion, the next question for the Court is whether defendants' actions are exempt from the automatic stay under § 362(b)(2)(B). If so, defendants' excepted conduct is allowed. If not, the Court will address the final question: whether defendants' conduct is subject to sanctions under § 362(k).

D. Applicability of 11 U.S.C. § 362(b)(2)(B)

At trial, defendants took the position that any action taken by them after plaintiff commenced his bankruptcy case is exempt from the automatic stay under § 362(b)(2)(B).[3]

---

[3] Although not argued by the parties, for the sake of completeness, the Court also considers whether defendants' actions were excepted from the automatic stay pursuant to § 362(b)(1) as the continuation of a criminal action.

Defendants argue that because the Money Judgment is a "domestic support obligation" as that term is defined under § 101(14A), any action by them to collect the Money Judgment is allowed by § 362(b)(2)(B). Plaintiff has a different view. He argues that the Money Judgment was not entered for the purpose of awarding support to Tomor and/or to his children. Plaintiff contends that the Money Judgment is not a domestic support obligation and defendants' conduct is not exempt from the constraints of the automatic stay. Plaintiff also asserts that even if this Court were to conclude that the Money Judgment constitutes a domestic support obligation, defendants' conduct is still not permitted under § 362(b)(2)(B) because defendants sought to enforce, not collect, the Money Judgment, and while collection is a protected activity, enforcement is not.

Accordingly, the heart of the parties' dispute is not whether defendants took steps after the bankruptcy filing to obtain payment of the Money Judgment, but rather, whether the Money Judgment constitutes a domestic support obligation and whether the term "collection" in § 362(b)(2)(B) includes the enforcement of a domestic support obligation through contempt proceedings.

1. Is the Money Judgment a Domestic Support Obligation?

The determination of what constitutes a domestic support obligation is based on principles of federal law and is a fact intensive inquiry. *Romano v. Romano* (*In re Romano*), 548 B.R. 39, 46 (Bankr. S.D.N.Y. 2016); *Grinspan v. Grinspan* (*In re Grinspan*), No. 13-76084-las, 2015 WL 4450668, at *5 (Bankr. E.D.N.Y. July 20, 2015) (citing *Falk & Siemer, LLP v.*

---

At trial, the contempt motion was referred to as both civil and criminal in nature. Tr. 21:7-8, 203:18. However, the language appearing on the face of the Contempt Motion is required by N.Y.C.P.L.R. § 756 for civil contempt and the type of relief sought was to vindicate Tomor's private rights under her divorce agreement with plaintiff, which is indicative of civil contempt, as opposed to the vindication of an offense against the public, which is indicative of criminal contempt. *In re White*, 478 B.R. 177, 182 (Bankr. S.D.N.Y. 2012). Accordingly, the Contempt Motion in the instant case is an action for civil contempt, which falls beyond the scope of § 362(b)(1). *See id.* at 183-84.

*Maddigan* (*In re Maddigan*), 312 F.3d 589, 595 (2d Cir. 2002)).  Domestic support obligations

are defined in § 101(14A), which provides:

> The term "domestic support obligation" means a debt that
> accrues before, on, or after the date of the order for relief in a
> case under this title, including interest that accrues on that debt
> as provided under applicable nonbankruptcy law . . . that is:
> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such child's
> parent . . . ;
> . . . .
> (B) in the nature of alimony, maintenance, or support . . . of such
> spouse, former spouse, or child of the debtor or such child's
> parent, without regard to whether such debt is expressly so
> designated;
> (C) established or subject to establishment before, on, or after
> the date of the order for relief in a case under this title, by reason
> of applicable provisions of—
> (i) a separation agreement, divorce decree, or property
> settlement agreement;
> (ii) an order of a court of record;
> (iii) a determination made in accordance with applicable
> nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity . . . .

11 U.S.C. § 101(14A).

The Settlement states that if either party is in default, the defaulting party will

reimburse the non-defaulting party for reasonable attorneys' fees incurred in bringing suit

or another proceeding to enforce the Settlement so long as the non-defaulting party prevails.

Defs.' Ex. A at 41; Stip. ¶ 5.  The facts show that the Money Judgment is based on an award

of attorneys' fees pursuant to this default provision.  It did not arise by reason of a separate

award for alimony, maintenance or support in the parties' matrimonial action.  Plaintiff

argues therefore that the Money Judgment is not a domestic support obligation, but rather a

penalty for not complying with the terms of the Settlement.  Adv. Dkt. No. 51 at 11-12.  In

support of this argument, plaintiff cites *Smith v. Pritchett* (*In re Smith*), 586 F.3d 69 (1st Cir.

2009).  In *Smith*, the First Circuit held that a clause in a divorce agreement providing $50

per day for late alimony payments was a penalty and not a domestic support obligation.  *Id.*

at 74-75. The First Circuit reasoned that "the [late] fee was contingent on [the debtor's] tardiness to pay," "was not certain to materialize at all," and was "intended to encourage payment of alimony and was not itself alimony." *Id.* at 75. The $50 per diem late fee in *Smith* was intended to force the debtor to comply with his alimony obligations. Similarly, the reimbursement of legal fees under the default provision in the Settlement was intended to incentivize the parties to fulfill their respective duties under the Settlement. A central fact in *Smith* relevant to plaintiff's argument here was the court's finding that "[l]egal fees incurred in enforcing the agreement, a provision not always contemplated in such contracts, were clearly provided for" by the parties. *Id.* at 75. Thus, the First Circuit distinguished a provision in a divorce agreement that provided for legal fees from a clause that imposes a late payment fee for the failure to timely meet obligations under the agreement. *See id.* The First Circuit's analysis in *Smith* is instructive because the fact that attorneys' fees were separately provided for in the divorce agreement weighed against finding that a late payment fee constituted additional support to the debtor's former spouse. *Id.* Likewise, the default provision in the Settlement that specifically awards Tomor $15,000 in attorneys' fees is separate from the provision that provides an award of attorneys' fees under the default provision; the default provision was not designed to support Tomor and/or their children. Defs.' Ex. A at 46. Rather, it was designed to provide the parties with an incentive to timely perform their respective obligations under the Settlement. That fact weighs against a finding that the Money Judgment constitutes a domestic support obligation.

In addition, the Court finds instructive the well-reasoned and thoughtful opinion of Bankruptcy Judge Dorothy Eisenberg in *Gilman v. Golio* (*In re Golio*), 393 B.R. 56 (Bankr. E.D.N.Y. 2008). In *Golio*, the debtor and his former spouse entered into a stipulation of settlement which, among other things, provided that the parties "agree[ ] to indemnify and

hold the non-default[ing] party harmless for any and all expenses and/or damage, including reasonable attorneys['] fees and litigation expenses, as a result of his or her breach" of the settlement. *Id.* at 58. The debtor defaulted under his obligations, causing his former spouse to commence proceedings in state court to enforce the agreement. *Id.* at 60. The state court entered a judgment against the debtor awarding his former spouse $183,000 in attorneys' fees prior to the debtor filing a chapter 7 bankruptcy petition. *Id.* Judge Eisenberg held that the fees were "clearly incurred in connection with the parties' divorce" and the debtor's ex-spouse was entitled to indemnification under the divorce agreement. *Id.* at 63. In ruling on whether the attorneys' fees were nondischargeable in the debtor's chapter 7 case, Judge Eisenberg found them to be nondischargeable under § 523(a)(15) as a debt incurred in the course of a divorce or separation rather than under § 523(a)(5) as a domestic support obligation. As noted above, the definition of "domestic support obligation" in § 101(14A) includes debts owing to a spouse, former spouse, or child of a debtor that is in the nature of alimony, maintenance, or support. The definition does not include debts arising from a division of marital property under a separation agreement or divorce decree. Those obligations are covered under § 523(a)(15). In a chapter 7 case, § 523(a)(15) excepts from discharge a debt that is not of the kind described in § 523(a)(5) and "owed to a spouse, former spouse, or child of the debtor" that was "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record." 11 U.S.C.§ 523(a)(15); *see Golio*, 393 B.R. at 63. Consequently, in holding that the debt at issue was excepted from discharge under § 523(a)(15) as opposed to § 523(a)(5), Judge Eisenberg found that attorneys' fees awarded to a non-defaulting party pursuant to an indemnification provision in a divorce agreement did not constitute a domestic support obligation. *Golio*, 393 B.R. at 63.

In further support of their argument, defendants cite to cases in which an award for attorneys' fees has been held to be a domestic support obligation. Although the Court agrees with the general premise that attorneys' fees awarded in a pre-petition matrimonial action may under certain circumstances fall within the definition of a domestic support obligation, *see Golio*, 393 B.R. at 61-63, the Court notes that defendants' argument overlooks the basis for the attorneys' fees awarded by the Money Judgment. It is that basis which renders the Money Judgment distinguishable from the case law defendants cite. In *Rogowski*, a debtor's pre-petition obligation to pay his ex-spouse's matrimonial attorneys' fees awarded after a trial concerning various economic issues between the parties was held to be a domestic support obligation. *In re Rogowski*, 462 B.R. 435, 447 (Bankr. E.D.N.Y. 2011). However, *Rogowski* was rooted in New York Domestic Relations Law. The court in *Rogowski* analyzed New York Domestic Relations Law and found that awards of matrimonial attorneys' fees are only proper if, "at a minimum, . . . the former spouse requires financial support." *Id.* at 446. The court found clear evidence the debtor's former spouse required financial support because she had no prospects for work other than part time unskilled jobs and had not worked in her chosen field for over 13 years at the time of divorce, that the debtor was the sole wage earner for the last 12 years of the marriage, and that there was no equitable distribution for either party to leave the marriage with. *Id.* at 446-47. Because New York Domestic Relations Law requires matrimonial attorneys' fees to only be awarded if financial support is required, a proper award of attorneys' fees under that same law "is in the nature of . . . support" and satisfies the definition of a domestic support obligation under § 101(14A). *Id.* at 447. That is not the case here. The evidence presented at trial made clear that the attorneys' fees that formed the basis of the Money Judgment were contemplated and agreed upon by Tomor and the plaintiff in the event either of them were to default under the terms of the Settlement;

the legal fees at issue were not awarded because they were required for financial support. Defs.' Ex. A at 41; Stip. ¶ 5.

Here, the Court finds no persuasive evidence that the obligation to pay attorneys' fees in this case is in the nature of alimony, maintenance or support. Simply stated, the attorneys' fees awarded to Tomor by reason of plaintiff's noncompliance with his obligations under the Settlement do not come within § 101(14A)'s definition. As noted above, the fees were intended to incentivize the performance by the parties under the Settlement rather than to provide support for Tomor and/or the parties' children.

There are three salient facts that support the Court's finding that plaintiff's obligation to pay attorneys' fees awarded by the Money Judgment is not a domestic support obligation as defined in § 101(14A). First, the default provision in the Settlement was not intended to exclusively benefit Tomor. Rather, the default provision was meant to protect both Tomor and plaintiff in the event either of them defaulted in their respective obligations under the Settlement. In addition, if, hypothetically, Tomor brought suit as the non-defaulting party and did not secure a judgment in her favor, under the terms of the default provision, she would be responsible for plaintiff's attorneys' fees. *See* Defs.' Ex. A at 41. Second, as was the case in *Smith*, the Settlement contained a separate provision for attorneys' fees incurred by Tomor, not inclusive of those that could potentially be awarded under the default provision. *Smith*, 586 F.3d at 75; Defs.' Ex. A at 46. The fact that the parties already contemplated Tomor's attorneys' fees, irrespective of those in the Money Judgment, weighs against finding the Money Judgment to be a domestic support obligation. *Smith*, 586 F.3d at 75. Lastly, the structure of the Settlement suggests the attorneys' fees are not in the nature of alimony, maintenance, or support because the section in the Settlement that provides for attorneys' fees in the event of a default is separate from the sections that deal with child support, medical coverage, "maintenance/spousal support/alimony," and marital property division.

Defs.' Ex. A at 17, 30, 33; *see Romano*, 548 B.R. at 46 (considering the structure of the terms of the final divorce decree to assess whether the parties intended to create a domestic support obligation). As noted, in *Golio*, Judge Eisenberg found an award of attorneys' fees made pursuant to a clause in a divorce agreement similar to the one between plaintiff and Tomor not to be a domestic support obligation for purposes of whether the debt at issue was excepted from discharge under § 523(5). The Court agrees with Judge Eisenberg's rationale and holds that the Money Judgment is not a domestic support obligation, but is instead a debt "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." 11 U.S.C. § 523(a)(15); *see Golio*, 393 B.R. at 63.

2. Is Litigating the Contempt Motion "Collection" or "Enforcement"?

Even if the Court had determined that the Money Judgment constitutes a domestic support obligation, the inquiry of whether defendants' conduct is exempt from the automatic stay under § 362(b)(2)(B) would not end there. Identifying the Money Judgment as a domestic support obligation is only the first step in determining whether the exemption applies. The second step is to determine whether the exemption for "the collection of a domestic support obligation" in § 362(b)(2)(B) permits defendants to proceed unimpeded in state court to enforce plaintiff's financial obligation under the Money Judgment. The answer turns on how the term "collection" is construed. In other words, what does the term "collection" mean? Defendants urge the Court to broadly construe the term "collection" to include proceedings to enforce domestic support obligations, such as contempt proceedings. Adv. Dkt. No. 49 at 4-6. If defendants' reading of the statute is correct, the exception takes hold, and their post-petition conduct with respect to the Contempt Motion is free of the constraints imposed by the automatic stay. Of course, plaintiff disagrees. Plaintiff contends a narrower reading of "collection" is consistent with the express language found in other exceptions to the stay

under § 362(b), and that § 362(b)(2)(B) cannot be read to encompass contempt proceedings to enforce domestic support obligations.  Adv. Dkt. No. 51 at 5-10.  While there is a split of authority on this issue, for the reasons that follow, the Court finds persuasive the reasoning of those courts that adhere to a narrow reading of the term "collection" when determining whether actions to enforce domestic support obligations transgress the automatic stay.  The Court agrees with plaintiff's interpretation of § 362(b)(2)(B) that post-petition enforcement of a support obligation through contempt proceedings violates the automatic stay.  *See Gorokhovsky v. Ocheretner* (*In re Gorokhovsky*), No. 17-28901-beh, 2018 WL 3325716, at *4 (Bankr. E.D. Wis. July 5, 2018); *Lori v. Lori* (*In re Lori*), 241 B.R. 353, 354 (Bankr. M.D. Pa. 1999).

"No one provision of the Bankruptcy Code can be viewed in isolation from the others; each provision must be construed in the context of the entire statute."  *Geron v. Valeray Realty Co., Inc.* (*In re Hudson Transfer Grp., Inc.*), 245 B.R. 456, 460 (Bankr. S.D.N.Y. 2000) (citing *United Sav. Ass'n of Tex. v. Timers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988)).  The Supreme Court has held that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

The Court begins its inquiry by looking to the language of § 362(b).  *See In re Phillips*, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012) (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)).  Section 362(b)(2)(B)'s exception to the automatic stay applies to "the collection of a domestic support obligation that is not property of the estate."  The word "enforcement" is notably omitted from § 362(b)(2)(B), but is included elsewhere in § 362(b).  *See* § 362(b)(2)(G),

(4), (20), (21), (25)(A), (25)(B).  In particular, § 362(b)(2)(G) excepts from the automatic stay "the enforcement of a medical obligation" and § 362(b)(4) excepts "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit."  Moreover, § 362(a)(2) clearly stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title" and § 362(a)(4) and (5) stay acts to "enforce" liens against property of the estate and liens that secured claims that arose pre-petition.  By omitting "enforcement in § 362(b)(2)(B), but including it in multiple subsections of § 362(a) and (b), it necessarily follows that Congress' exclusion was purposeful and indicative of an intent to differentiate between "collection" and "enforcement."  *See Russello*, 464 U.S. at 23; *In re Jenkins*, No. 05-73127, 2011 WL 2619317, at *10 (Bankr. N.D.N.Y. July 1, 2011); *see also* HENRY J. SOMMER & MARGARET DEE MCGARITY, COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 5.03[3][b][iii] (Matthew Bender) ("Indeed, Congress used the word enforcement specifically in the new section 362(b)(2)(G), relating to medical obligations, which suggests that the failure to broadly permit all other support enforcement was intentional.").

This narrow interpretation of § 362(b)(2)(B) has been followed by numerous courts across the country.  *See, e.g.*, *Hass v. Duncan*, No. 1:05cv91(JCC), 2005 WL 5714293, at *2-3 (E.D. Va. July 6, 2005); *Jenkins*, 2011 WL 2619317, at *9-10; *In re Gresham*, No. 06-60027-MHM, 2008 WL 3484318, at *2-3 (Bankr. N.D. Ga. Aug. 12, 2008); *Brooks v. Brooks* (*In re Brooks*), No. 03-3194, 2007 WL 540786, at *3-4 (Bankr. E.D. Tenn. Feb. 15, 2007); *Lori*, 241 B.R. at 354-56.  In support of drawing a distinction between "collection" and "enforcement" of domestic support obligations, these courts have looked to *Collier* for guidance.

> Unlike some of the other exceptions to the stay listed in section 362(b), [section 362(b)(2)(B)] did not extend, prior to the 2005 amendments, to the commencement or continuation of proceedings to enforce an obligation. Section 362(b)(2)(B) protects an obligee who receives property that is not property of the estate on a prepetition obligation, for example, through a prior wage attachment, from claims that such receipt is improper. However, this provision did not authorize, prior to the 2005 amendments, enforcement litigation against the debtor without relief from the automatic stay. A separate provision, section 362(b)(2)(A), which grants an exception for the commencement or continuation of an action or proceeding, had been limited to the establishment or modification of an order for alimony, maintenance or support. Proceedings to enforce such orders were conspicuously omitted from the exception and were stayed, except in cases criminal in nature and permitted by section 362(b)(1).

COLLIER ON BANKRUPTCY ¶ 362.05[2] (Richard Levin & Henry J. Sommer eds., 16th ed.) (footnotes omitted). *Collier* further provides that the 2005 amendments to the Bankruptcy Code "added several exceptions permitting the commencement or continuation of certain proceedings related to the enforcement of a domestic support obligation." *Id.* For example, § 362(b)(2)(C) "provides an exception to the stay with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute." *Id.*

"Since proceedings to enforce alimony or support orders are normally continuations of earlier proceedings, the absence of language in section 362(b) excepting the continuation of enforcement proceedings from the stay casts significant doubt on whether such proceedings are included in the exception to the automatic stay." COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 5.03[3][b][iii]. Moreover, *Collier* notes that "[u]nless the word 'collection' is interpreted to encompass the continuation of a proceeding for the purpose of collection, a proceeding to enforce an earlier support or alimony order or agreement is barred by the automatic stay." *Id.* Because other exceptions to the automatic stay "specifically speak

of enforcement of judgments, it is unlikely such an interpretation was intended" by Congress regarding § 362(b)(2)(B). *Id.*

However, there are a number of courts that disagree with the *Collier* interpretation of "collection" and interpret "collection" to include "enforcement." *See, e.g.*, *In re Toronto*, No. 15-10663-BAH, 2016 WL 4626108, at *7 n.26 (Bankr. D.N.H. Sept. 2, 2016); *In re Angelo*, 480 B.R. 70, 88-92 (Bankr. D. Mass. 2012); *In re Johnston*, 321 B.R. 262, 276-78 (D. Ariz. 2005); *Lowery v. McIlroy & Millian* (*In re Lowery*), 292 B.R. 645, 649-650 (Bankr. E.D. Mo. 2003). The most thorough analyses of this construction of § 362(b)(2)(B) are set forth in *Johnston* and *Angelo*.

The *Johnston* Court utilized a "plain meaning" interpretation of the word "collection" to critique the *Collier* position—it believed the *Collier* reading of § 362(b)(2)(B) to "stand[] or fall[]" on whether "collection" is active or passive and if there is any significance to Congress' decision not to use "enforcement" in that subsection. *Johnston*, 321 B.R. at 276-77. Quoting *Webster's Dictionary*, the *Johnston* Court found the plain meaning of "collection" to be the "act of collecting" and "not merely a passive undertaking" as *Collier* suggests. *Id.* at 277. The *Johnston* Court continued, finding it "unlikely that Congress would choose the less common, passive definition [of collection] without making its choice explicit." *Id.*

In a similar vein, the *Angelo* Court fully embraced *Johnston*'s interpretation of § 362(b)(2)(B). *Angelo*, 480 B.R. at 88. The court rejected the argument that collection "means nothing more than 'receiving payment' and does not include contempt process," holding that limiting "collection" to "the passive act of receiving payment is not at all warranted by its ordinary usage." *Id.* at 88-89. Moreover, the court found it to be a misreading of the automatic stay to contend that "collection" and "enforcement" have different meanings and do not overlap. *Id.* at 89. To support its interpretation, the court

24

stated there is intentional overlap in § 362(a) "to put in place a broad and comprehensive stay, one without gaps.  To that end, it is comprised not of a single stay but of eight, arrayed in paragraphs (a)(1) through (a)(8), most of which are themselves comprised of multiple stays. Among the numerous stays that together constitute the automatic stay there exists considerable overlap."  *Id.* at 90 (footnotes omitted).

The Court disagrees with the broad interpretation of § 362(b)(2)(B) advanced in *Johnston* and *Angelo*, and adopts the narrow interpretation utilized by *Collier*.  "However tempting it may be to unqualifiedly protect a debtor's paramour, spouse, or children, exceptions to the automatic stay must be construed narrowly and relief from the automatic stay is readily available should a creditor choose to pursue that course." *Jenkins*, 2011 WL 2619317, at *10.  To read into § 362(b)(2)(B) a broad exception to the automatic stay "would add an exception . . . that was clearly not contemplated by Congress."  *See In re Weidenbenner*, 521 B.R. 74, 81 (Bankr. S.D.N.Y. 2014) (interpreting § 362(b)(3) narrowly because "[i]t is at odds with the plain language of the Bankruptcy Code to read into the Code an [enormous] exception to the automatic stay . . . in the absence of express statutory language").  Congress enumerated 28 exceptions to the automatic stay in § 362(b) and three of those exceptions directly reference domestic support obligations: § 362(b)(2)(A)(ii), (B), and (C).  Thus, Congress "knew how to create exceptions to [the] automatic stay and chose not to" create an exception specifically for the enforcement of domestic support obligations.  *See id.* For these reasons, a rejection of the plain meaning argument of "collection" advanced in *Johnston* and its progeny is consistent with the statutory scheme of the automatic stay.  To hold otherwise would strain the text of § 362(b)(2)(B) and lead to a departure from the traditional methods of collection of domestic support obligations such as wage garnishment and receipt of payments from non-estate property—neither of which Seidemann sought to do. COLLIER FAMILY LAW AND THE BANKRUPTCY CODE 5.03[3][a][i]; Tr. 216:9-13.  Accordingly,

the Court finds that even if the Money Judgment constitutes a domestic support obligation, defendants violated the automatic stay because litigating the Contempt Motion was the "enforcement" of a domestic support obligation, which is not excepted pursuant to § 362(b)(2)(B) as "collection."

    E.  Did Defendants Willfully Violate the Automatic Stay?

Having found the automatic stay was violated under § 362(a), and that the exemption under § 362(b)(2)(B) is not applicable, the Court now considers whether sanctions should be imposed against defendants pursuant to § 362(k). In resolving this question, the Court first considers the legal principles applicable to § 362(k), and then addresses plaintiff's arguments that defendants willfully violated the automatic stay.

Section 362(k) creates "a private right to sue for damages on behalf of an individual injured by a willful violation of the automatic stay." *In re Ampal-Am. Isr. Corp.*, 502 B.R. 361, 370 (Bankr. S.D.N.Y. 2013). "An individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "'Willful' means 'any deliberate act taken in violation of a stay, which the violator knows to be in existence.'" *In re Sturman*, No. 10 Civ. 6725 (RJS), 2011 WL 4472412, at *2 (S.D.N.Y. Sept. 27, 2011) (quoting *Crysen/Montenay*, 902 F.2d. at 1105). "A specific intent to violate the stay is not required; instead, general intent in taking actions which have the effect of violating the automatic stay is sufficient to warrant damages." *Jean-Francois*, 532 B.R. at 454 (quoting *Ampal*, 502 B.R. at 373); *see also Weber v. SEFCU* (*In re Weber*), 719 F. 3d 72, 82 (2d Cir. 2013) ("A creditor willfully violates section 362 when it knows of the filing of the petition (and hence of the automatic stay), and has the general intent simply to perform the act found to violate section 362; no specific intent to violate section 362 is necessary."). "A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful." *In re*

*Gilford*, 567 B.R. 412, 417 (Bankr. E.D.N.Y. 2017) (quoting *Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265, 268-69 (1st Cir. 1999)).

Where a violation of the stay is willful, § 362(k) mandates an award of actual damages. Whether to assess punitive damages lies within the discretion of the Court. "An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages . . . ." *Crysen/Montenay*, 902 F.2d at 1105; *see also Ebadi*, 448 B.R. at 320 ("Punitive damages . . . are only appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner." (citing *Prusan*, 495 B.R. at 207)).

At trial, Seidemann disputed that he had actual knowledge of plaintiff's bankruptcy case on December 3, 2013, the date the chapter 7 petition was filed. *See* Tr. 133:15-25, 134:1-6. Seidemann testified he was not in his office that day to receive the letter Kanter sent him via fax which expressly stated that the automatic stay was in effect due to plaintiff's having commenced a bankruptcy case. Pl.'s Ex. 9; Tr. 134:18-135:14. However, Seidemann admitted he did see the letter on December 9. Tr. 255:10-12. Seidemann also testified that he received a telephone call, during which he "was advised that an attorney was retained by Mr. Grinspan to file bankruptcy on his behalf." Tr. 134:2-3. While Seidemann's testimony relating to this phone conversation indicates he had notice that plaintiff intended to file for bankruptcy relief, an indication that a bankruptcy may be filed is insufficient to constitute actual notice for purposes of a willful stay violation. *Prusan*, 495 B.R. at 207.

Even if Seidemann did not have actual knowledge of the bankruptcy petition on its filing date, as mentioned above, Seidemann did have actual knowledge of plaintiff's filing, and consequently the automatic stay, as early as the date of the Contempt Motion hearing on December 5, 2013. He testified that he believed the stay was "inapplicable" from December 3, 2013 onwards because the Money Judgment was a domestic support obligation and that

the bankruptcy filing "gave [him] pause as to how to deal with monetary issues" before he proceeded to court on December 5. Tr. 167:21-25, 188:2-8. Seidemann contends that Judge Maron found that the Money Judgment was a domestic support obligation – he testified that Judge Maron "affirmatively [told him] that [the Money Judgment] is a domestic support order" and that he was asked to submit a proposed order reflecting as such. Adv. Dkt. No. 2-12; Tr. 220:24-221:5. Defendants did not produce a transcript of any hearing at which Judge Maron made such a ruling. Additionally, despite this purported directive, Seidemann knew that Judge Maron did not sign any proposed order nor issue a written opinion concluding that the Money Judgment was a domestic support obligation. Tr. 176:7. The evidence introduced at trial establishes that Seidemann had actual knowledge of the bankruptcy filing and decided to take steps post-petition to enforce the Money Judgment via the Contempt Motion. Despite the bankruptcy filing, he sought to have the Contempt Motion granted in its entirety. Based on the trial record, the Court finds that Seidemann had the requisite general intent to take actions that had the effect of violating the stay under § 362(k). *See Beckford v. Romano* (*In re Beckford*), 572 B.R. 61, 68-69 (Bankr. D. Conn. 2017); *Sucre*, 226 B.R. at 349. That is sufficient to warrant damages under § 362(k). *See Jean-Francois*, 532 B.R. at 454.

Because the Court finds defendants willfully violated the automatic stay, an award of actual damages incurred by plaintiff is mandated by § 362(k)(1). *Gilford*, 567 B.R. at 416; *see also Crysen/Montenay*, 902 F.2d at 1105 ("[A]ny deliberate act taken in violation of the stay, which the violator knows to be in existence, justifies an award of actual damages."). Actual damages include attorneys' fees and costs that are reasonable and necessary. *Prusan*, 495 B.R. at 208. Here, plaintiff was required to appear and act in both this Court and state court to enforce the automatic stay. *But see id.* (holding debtor suffered no actual damages because he did not have to defend himself in state court proceedings regarding a contempt

28

motion and did not have to bring an adversarial proceeding in the bankruptcy court to enforce the automatic stay). The Court reserves judgment on actual damages pending submission of supplemental briefing.[4]

As for plaintiff's request for an award of punitive damages, the evidence presented at trial, including the testimony of Seidemann, does not support a finding that defendants acted with malice or in bad faith. While Seidemann could have prevented this outcome by simply asking this Court for relief from the automatic stay before unilaterally deciding to continue with the state court proceeding, a "callous disregard" for the automatic stay is insufficient to support a finding of bad faith. *Beckford*, 572 B.R. at 68-69. Accordingly, the Court does not find Seidemann's actions constituted "aggravated circumstances that would warrant punitive damages." *In re Velichko*, 473 B.R. 64, 70 (Bankr. S.D.N.Y. 2012); *see Jean-Francois*, 532 B.R. at 457-59; *Ebadi*, 448 B.R. at 320.

F. Plaintiff's Request for a Permanent Injunction

Plaintiff also asks the Court to permanently enjoin defendants from enforcing the Money Judgment and compelling plaintiff to answer the Information Subpoena. Adv. Dkt. No. 51 at 1. The Court need not address plaintiff's request for permanent injunctive relief because Seidemann withdrew the Contempt Motion, plaintiff answered the Information Subpoena, and the Money Judgment was vacated by the state court. Moreover, there is nothing in the trial record to support a finding that Seidemann will file another contempt motion seeking to relitigate issues regarding the Money Judgment or Information Subpoena. Tr. 247:20-248:2.

---

[4] At trial, the parties agreed not to introduce evidence as to whether plaintiff incurred actual damages unless the Court determined that defendants willfully violated the automatic stay. Tr. 61:8-64:24.

III.    Conclusion

For the foregoing reasons, the Court finds that plaintiff has proven by a preponderance of the evidence that defendants willfully violated the automatic stay.  Having determined that a willful violation of the stay occurred, the Court reserves judgment on actual damages pending submission of supplemental briefing.  The Court will issue a separate order setting forth a briefing schedule and a hearing date on actual damages.  No other or further damages are appropriate.  Plaintiff's request for a permanent injunction is dismissed as moot.

SO ORDERED.



**Dated: February 8, 2019**
**Central Islip, New York**

_Louis A. Scarcella_
**Louis A. Scarcella**
**United States Bankruptcy Judge**